Dale L. Baker was tried by the Circuit Court on four counts of predatory criminal sexual assault of a child. In all four counts, the complainant was Dee Bee, a young girl. The Court found Dale Baker not guilty of count 2, guilty of counts 1, 3, and 4. This appeal concerns count 3, which alleged that Baker's penis made contact with Dee Bee's mouth. My argument, in a nutshell, is that the total evidence is not established beyond a reasonable doubt that the penis made contact with Dee Bee's mouth. The State's evidence as to count 3 consisted of the trial testimony of Dee Bee, a lengthy recorded interview of Dee Bee by an Illinois State Police Special Agent, and the trial testimonies of three witnesses who described out-of-court or hearsay statements made by Dee Bee to them. Now, it is some of the out-of-court statements that really are the strongest evidence. I would suggest the only evidence that Gil has to count 3. So I have quite a bit to say about those particular out-of-court statements. But I think that they can be evaluated properly only in the context of the total evidence. Let me quickly say that in her trial testimony, Dee Bee indicated that Baker's penis touched her chin. She did not indicate that it touched her mouth. The prosecutor questioned Dee Bee quite specifically on this topic. So in Dee Bee's trial testimony, we find no support, and even a contradiction, of the allegation of penile oral contact. As for the recorded interview with the ISP Special Agent, it lasted 45 minutes or longer and was quite detailed. Dee Bee did tell the Special Agent that Baker put his penis in her mouth. But she also told the Special Agent, almost in the same sentence, that she was asleep at the time and that she did not wake up. The obvious rhetorical question is, how can a person speak credibly about an event that she slept through? She cannot. She woke up and choked? I'm sorry? She said, I woke up? Oh. Choking? That relates to statements to one of the witnesses who testified about the out-of-court statements. Yes. And she was choking. That's my next thing. Okay. Oh, but I would ask the Court to note that in that recorded interview with the Special Agent, Dee Bee was quite specific and clear, very clear, about the penile vaginal contact and the penile anal contact. It was nothing about, you know, I was asleep at the time or I was waking up at the time or anything like that. Those qualifiers applied only to the penile oral contact, the graveman of Count 3. Now, in regard to these witnesses who testified about the out-of-court statements, the first such witness was Dee Bee's mother. According to the mother, Dee Bee told her that eventually, she told her that Baker placed his penis in her vagina and in her anus. Nothing about the mouth, nothing about penile oral contact in the statements to the mother. It was the second witness, the second hearsay witness, a medical social worker, who testified that Dee Bee told her that Baker put his penis in her mouth and it choked her and she woke up choking. The statements that Justice Bomer referenced. And yes, all that is true. That certainly is a culpatory, this first really culpatory statement that was mentioned during this trial that I've mentioned here in this oral argument. But I would ask the Court to consider a few things about that, about that statement. First of all, it's inconsistent with the prior out-of-court statements. And it certainly is inconsistent with Dee Bee's trial testimony where she said that the penis touched her chin. So we have that inconsistency to consider. And also, just think about common experience here. When a person is asleep or is just coming out of sleep, that person's ability to perceive is much reduced from the level where it is when the person is awake. The person's ability to perceive, to remember, et cetera, much lower when the person is, you know, coming out of sleep. And it's these statements about penile oral contact that include this business about, you know, being asleep or coming out of sleep. As I said earlier in regard to the other statements, her statements to the medical social worker concerning penile vaginal contact and penile anal contact didn't include anything about being asleep or waking up from sleep. It was only these statements about penile oral contact that included these qualifiers of being asleep or coming out of sleep. So I would suggest that, you know, given the sleepiness involved, those statements about penile oral contact are entitled to much less, you know, far less weight than the statements about penile vaginal or penile anal contact. There was a third witness who testified about out-of-court statements by DV. That was a youth therapist. The trial started in August of 2009. The youth therapist testified that she had been seeing DV as a patient for about four months. So apparently the doctor-patient relationship began, or the therapist-patient relationship began in April of 2009. And here, in the statement to the youth therapist, was clear, unequivocal, and did not have anything about sleeping or waking after us. The youth therapist testified that DV told her, simply, that Baker put his penis in her mouth. Now that certainly is an inculpatory statement. Who is the youth therapist? Is that Maya or someone else? No. Because I'm looking at her testimony as Maya. And she said, he did put his peepee in my mouth while I was sleeping. And I said, being Maya, well, if you were sleeping, how would you know that that happened? And she said, it choked me. She said, I woke up choking. Right. That's the medical social worker. We talked about her a moment ago. That's the testimony that Justice Spomer was referencing. And that's where I, that's the, those are the part of the statements where I said, you know, it's the penile oral statements only that got these qualifiers about I was asleep or I was waking up or it woke me up. Well, this is pretty clear where she said, he did put his peepee in my mouth. Yes. Yes. And I would only ask the Court to consider that those statements are very different from the statements about penile vaginal or penile anal contact. With those other statements, we didn't have anything about how it happened while I was asleep or it happened while I was waking up or any of the rest. That's, those sorts of qualifiers are only in regard to the statements about penile oral contact. That's why I suggest that they should be given, you know, far less weight and deserve or entitled to far less weight than the statements about penile vaginal and penile anal contact. And as I say, they are inconsistent with her statements that she made in that lengthy interview with the ISP special agent. They certainly are inconsistent with her trial testimony where she testified that the penis touched her chin and did not indicate that it touched her mouth. Justice Chapman, I think you were looking at my brief there. Right after, right after I talk about that, the testimony from the medical social worker, I talk about the testimony from the youth therapist. It's just one paragraph. Well, actually, I'm looking at the police brief. Oh. That's okay. You may have the same reference. Yes. It's only one short paragraph where I summarize the testimony from the youth therapist. The youth therapist talked about the emotional trauma, the emotional toll on DB.  Two more sentences. In regard to the allegation of count three, the penile oral contact, all that the youth therapist said was that DB told me that he put his penis in my mouth. Now, that was an unequivocal statement. It didn't have any qualifiers about being asleep or waking up. But I would ask this Court to consider first the inconsistency with the trial testimony and the statements to the ISP special agent, and also to consider that these statements to the youth therapist were made, they must have been made, well over a year, well over a year, after DB's recorded interview with the ISP agent, well over a year after DB's statements to the medical social worker. So I would suggest that those two are entitled to a lot less waiting. Okay. Thank you, Mr. Gleason. You'll have the opportunity. Okay. So I ask the Court to reverse the conviction on three. Thank you. Thank you. Ms. Stacy. Your Honors, counsel, may it please the Court, my name is Kelly Stacy, appearing on behalf of the people. In cases like this one where a defendant alleges that he was not convicted beyond a reasonable doubt, a reviewing court must ask itself whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt, because a criminal conviction will not be set aside on appeal unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. The defendant's issue in this appeal is whether the evidence establishes the penetration element necessary to sustain the conviction on count three, which alleged that he placed his penis in the mouth of 5-year-old DB. This case, like many sufficiency of the evidence cases, turns on the credibility of the witnesses, and the trial court was in the best position to make those determinations. It saw and heard the witnesses and examined their demeanor. The defendant argues that DB's trial testimony fails to establish that penile oral contact ever occurred, and in isolation it would seem that his argument might have merit. But here, in addition to DB's testimony, there was additional evidence presented to support the verdict. This evidence was the corroborating evidence of what little DB said happened to her when she was 5 years old. The evidence came in the form of DB's own video-recorded statement where she said, Beyond what counsel suggested that the record shows, the recorded DVD indicates that DB said it happened five times on the couch and six times in his daughter Kelly's room. This can be found between minutes 18 and 21 of the DVD. DB said the defendant told her that he also did it to his daughter and another girl. The defendant argues that the pretrial statements that the DVD gave, that the defendant placed his penis in her mouth, those statements are unreliable and so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. The Illinois Supreme Court has weighed in on this issue. It has indicated that Section 115.10 was originally passed in response to the difficulty in convicting persons accused of sexually assaulting young children. This difficulty occurs because children's testimony in sexual assault cases is often inadequate. Problems in proof may result when the lesser-developed cognitive and language skills that children have hinder them in adequately communicating the details of an assault. The legislature sought to create a hearsay exception to allow into evidence corroborative testimony that the child complained to another person about the incident. In addition to her own video-recorded statement, DB also disclosed the conduct to Ginger Meyer and Justice Chapman and Justice Foner both commented on this, that DB told Ms. Meyer that the defendant put his pee-pee in her mouth while she was sleeping. Meyer asked DB, well, how did you know that happened if you were asleep? DB explained that she woke up choking. Tony Anderson, the youth therapist, had done between 15 and 20 therapy sessions with DB, testified that DB disclosed to her that the defendant put his privates in her mouth. The defendant complains that the statements DB made were very brief and lacked detail. This claim should be rejected by this court. Again, DB was only five years old at the time of the sexual assaults. She described the defendant's penis as tall. She described it in a world she, as a five-year-old, would be able to describe them. She told Ginger Meyer the defendant put his penis in her mouth more than one time. The lack of detail is likely due to DB's lesser-developed cognitive and language skills. Before trialing began, the trial court conducted a hearing on the reliability of the out-of-court statements. Because the court found the statements were sufficiently reliable, they were admitted as substantive evidence. The Fourth District, in the case of People v. Lehrer from 2010, considered a very similar argument to the defendant's. The Fourth District found that the victim's trial testimony was not so much inconsistent with the videotaped statement as it was less complete. The court found that this is understandable in light of the victim's tender years and the passage of time. The victim in the Lehrer case was five years old. In the Lehrer case, the court noted, I'm going to read from the case here. It's a lot smaller print, so hopefully I'll get it here. Defendant also argues the trial court should have reversed its pre-trial ruling after Barkay testified at the trial because the contradictions between her testimony and her recorded interview rendered the interview unreliable. Defendant points to the fact that R.K. never stated at trial the defendant penetrated her with his tongue. When asked by the State if defendant ever touched her with any part of his body beside his hand, R.K. answered no. However, a five-year-old child most likely would not equate oral sex with touching. Touching for a five-year-old is done with fingers and hands. The determination of whether statements pursuant to Section 115.10 are sufficiently reliable to be admitted is left to the sound discretion of the trial court. Absent abuse of discretion, it should not be reversed. Abuse of discretion is certainly not present here. In this case, in addition to the trial testimony of D.B., the court considered the video-recorded statement where she disclosed oral contact. This video-recorded statement was made very close in time to the time she disclosed the incidents to her mother. The court considered the testimony of Ginger Meyer and Tony Anderson and found them to be credible. It was up to the trial court to determine the credibility of the witnesses. The defendant is asking this court to find reasonable doubt, but he concedes that the evidence is to be viewed differentially and in the light most favorable to the State. In a sufficiency of the evidence claimed, this court does not need to decide whether it believes the evidence established guilt beyond a reasonable doubt, just whether the evidence supports the finding that any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. In this case, I submit a reasonable trier of fact did just that. The people respectfully request this court firm the decision in trial court. Thank you. Thank you, Ms. Stacy. Mr. Gleason. I think we've all stated our cases. Unless there are any questions from the court, we do not have any rebuttal. Thank you. Thank you, Mr. Gleason. Ms. Stacy will take the matter under advisement.